IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD LEE MITCHELL, JR., | : | Civil No. 3:19-cv-0209 |
| Petitioner | : | (Judge Mariani) |
| v. | : | |
| WARDEN RICHARD MARSH, | : | |
| Respondent | : | |

**MEMORANDUM**

I. **Background**

Petitioner Edward Lee Mitchell, Jr., ("Mitchell") files the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the return of money seized from him during his 2016 arrest for six counts of robbery, three counts of theft by unlawful taking and one count of forgery. (Doc. 1).

For the reasons set forth below, the petition for writ of habeas corpus, which is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"), will be denied.

II. **State Court Factual and Procedural Background**

The following relevant facts and procedural history set forth below are extracted from the Superior Court of Pennsylvania's October 11, 2018 decision affirming the trial court's denial of Petitioner's Motion for Return of Property:

Mitchell entered a negotiated guilty plea to multiple counts of robbery, theft by

1

unlawful taking, and forgery,[1] after robbing a series of Kmart stores and Metro Banks and stealing and forging checks belonging to his parents. The court sentenced Mitchell on July 19, 2016, in accordance with the plea agreement, to an aggregate of 15 to 35 years' incarceration. The court also ordered Mitchell to pay court costs, fines totaling $600, and restitution of approximately $9,000.

At the conclusion of the sentencing hearing, the prosecutor stated that "the only other matter Mr. Mitchell's raised" was regarding "about $2,000" that police had seized from Mitchell when they arrested him. See N.T., 7/19/16, at 19. The prosecutor stated that the Commonwealth "ha[d] no objection to all the seized money ... to be put forth towards the restitution, fines, and costs in this case." *Id*. Neither Mitchell nor his lawyer objected, or requested that the court order the Commonwealth to return the money to Mitchell. The court accepted the proposal, and Mitchell's attorney responded, "Thank you, Your Honor." *Id*. Mitchell did not appeal.

The court entered an Amended Sentencing Order on August 31, 2016,[2] that corrected Mitchell's sentence, but did not address restitution, fines, or costs, or the seized money. Mitchell's aggregate sentence remained 15 to 35 years. On November 14, 2016, Mitchell filed a *pro se* Petition for the Disbursement of Confiscated Money. Mitchell acknowledged that at sentencing, the court had ordered that all seized money be put toward restitution, costs, and fines, but alleged that none of the funds had been so applied. Mitchell asked the court to order the confiscated money be applied toward his restitution, costs, and fines, and to inform the Department of Corrections of the order. The court gave the Commonwealth leave to respond to the Petition within 14 days; the Commonwealth filed no response. The court never ruled on this Petition. Subsequently, on January 9, 2017, Mitchell filed a pro se Petition for Entry of Final Order, again asking the court to apply the confiscated money to the restitution, costs, and fines he owed. The court did not rule on this Petition, either.

Mitchell then filed, through trial counsel, an Unopposed Motion to Amend Sentence, on January 30, 2017. On February 3, 2017, the court granted the motion, and again corrected Mitchell's sentence on certain counts to conform

---

[1] Mitchell pleaded guilty to a total of six counts of robbery, 18 Pa.C.S.A. § 3701(a)(1)(11), three counts of theft by unlawful taking, 18 Pa.C.S.A. § 3921(a), and one count of forgery, 18 Pa.C.S.A. § 4101(a)(2).

[2] The Order was dated August 30, 2016, but time stamped on August 31, 2016.

2

it to the plea agreement. The aggregate remained 15 to 35 years, and Mitchell did not appeal the amended sentence. Mitchell's trial counsel thereafter petitioned to withdraw as counsel, and the court granted the petition.

Mitchell filed a *pro se* Post Conviction Relief Act[3] ("PCRA") petition, on March 8, 2017, and the court appointed counsel. PCRA counsel filed an Amended Petition in June 2017 and a Second Amended Petition in July 2017. Relevant to this appeal, the Second Amended Petition alleged that the money that police had confiscated from Mitchell had not been applied to his fines, costs, and restitution, as the court had ordered. The PCRA court scheduled a hearing for January 4, 2018. Prior to the start of the hearing, the parties reached an agreement that Mitchell would withdraw his PCRA Petition and the court would enter an amended sentencing order addressing issues unrelated to this appeal. Pursuant to the agreement, on January 25, 2018, the court entered an Amended Sentencing Order, which again corrected Mitchell's sentence, but did not change his aggregate sentence of 15 to 35 years' incarceration, or address fines, costs, or restitution, or the seized money.

(Doc. 9-4 at 1-2, *Commonwealth v. Mitchell*, 441 MDA 2018 at 1-2, (Pa. Super. Oct. 11, 2018) (unpublished memorandum).

By Order dated January 29, 2018, the Court, finding that "prior to the start of the PCRA Hearing scheduled on January 4, 2018," the "parties were able to reach an agreement," ordered that "Defendant's *pro se* PCRA Petition(s) filed June 12, 2017 and Amendment PCRA Petition(S) filed July 6, 2017" were withdrawn and that "upon agreement of both parties, the Defendant is hereby resentenced as outlined in the Amendment Sentencing Order filed January 26, 2018." (Doc. 9-1 at 790, Order).

On January 29, 2018, Mitchell filed a *pro se* Motion for Return of Property ("Motion").

---

[3] *See* 42 Pa.C.S.A. §§ 9541-9546.

3

(Doc. 9-1 at 791). In the Motion, Mitchell argued that he was entitled to the return of the funds police had seized, pursuant to Pennsylvania Rule of Criminal Procedure 588.[4] *Id.* The Commonwealth filed an Answer to the Motion on February 16, 2018. (Doc. 9-1 at 797). By Order dated February 20, 2018, the court denied the Motion to return the property and directed that "the $1,505.18 U.S. Currency seized in this matter shall be applied towards the restitution owed." (Doc. 9-1 at 813, Order). The Order did not mention fines or costs. *Id.*

On February 28, 2018, Mitchell filed a timely notice of appeal, raising the following issues for review:

> 1. Did the lower court error (sic) when it ordered that Petitioner's confiscated money (1,505.18) be applied to the Petitioner['] fines, costs and restitution, when the Petitioner is already paying fines, costs and restitution pursuant to Act 84?
>
> 2. Did the lower court error (sic) when it denied the petitioner his constitution right to his money without due process of law?
>
> 3. Did the lower court error (sic) as a matter of law when it failed to return the Petitioner's $1,505.18 pursuant to the Pa. Rules of Criminal Procedure 588?

*Id.* In their March 26, 2018 Memorandum Opinion, written pursuant to Pa.R.A.P. 1925(a),

---

[4] Rule 588("Motion for Return of Property") states:
   (A) A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof. Such motion shall be filed in the court of common pleas for the judicial district in which the property was seized.(B) The judge hearing such motion shall receive evidence on any issue of fact necessary to the decision thereon. If the motion is granted, the property shall be restored unless the court determines that such property is contraband, in which case the court may order the property to be forfeited.
Pa.R.Crim.P. 588(A)-(B).

4

the trial court found the following:

> The Pennsylvania Supreme Court addressed this issue in *Commonwealth v. Allen*, 630 Pa. 577, 107 A.3d 709 (2014)(*Allen II*). Our Supreme Court held that "[Allen's] failure to file a return motion during the pendency of the criminal charges against him or within thirty days following the dismissal of the charges result[ed] in waiver." *Id.* at 718. As such, a criminal defendant who claims ownership of property must file that motion "in the trial court while that court retains jurisdiction, which is up to thirty days after disposition." *Allen II* at 717. *See also Commonwealth v. LeBrake*, 134 A.3d 166 (Pa. Super. 2016). Failure to do so results in waiver of "any entitlement to the return of property under Rule 588." *Id. See also Commonwealth v. Setzer*, 258 Pa. Super. 236, 392 A.2d 772, 773 (1978) ("[W]here an issue is cognizable in a given proceeding and is not raised it is waived and will not be considered on a review of that proceeding.").
>
> Here, Edward Mitchell was the defendant in the underlying criminal proceeding and could have filed his motion at any point prior to and up to thirty (30) days after the entry of his guilty plea. Appellant entered a guilty plea on May 23, 2016 and was sentenced on July 19, 2016. An amended Sentencing Order was entered on August 31, 2016. It was not until November 14, 2016 that Appellant initially filed a motion seeking the return of his property. This was after the thirty (30) day time period. Accordingly, Appellant has waived his claims.[5]

(Doc. 9-1 at 925-926, Memorandum Opinion).

By Memorandum Opinion dated October 11, 2018, the Pennsylvania Superior Court affirmed the denial of Mitchell's Motion for Return of Property. (Doc. 9-4 at 1-2, *Commonwealth v. Mitchell*, 441 MDA 2018 at 1-2, (Pa. Super. Oct. 11, 2018) (unpublished memorandum).

On February 6, 2019, Mitchell filed the instant petition for writ of habeas corpus

---

[5] Again, we note that Appellant's confiscated money is being applied to this restitution.

pursuant to 28 U.S.C. § 2254. In his petition, Mitchell raises the following three claims for relief:

> 1. Trial counsel provided ineffective assistance during sentencing proceedings by failing to object when the Commonwealth proposed that Petitioner's seized money should be applied to applicable costs and PCRA counsel was ineffective for failing to raise this claim in the initial collateral review petition.
>
> 2. The trial court violated Petitioner's Due Process rights by failing to conduct an on the record colloquy when the Petitioner waived his right to collateral review.
>
> 3. The trial court violated Petitioner's Due Process rights by failing to state the terms of the 1/25/18 plea agreement on the record, an agreement which the Commonwealth did not honor which essentially violates the original plea agreement rendering such involuntary and not intelligently knowing.

(Doc. 1, petition at 15-17).

On August 8, 2019, Respondent filed a response arguing that Petitioner has failed to exhaust his available state court remedies because he failed to seek any state court review with respect to the three issues raised in the instant petition for writ of habeas corpus. (Doc. 9). It is alternatively argued that the Petitioner's claims are meritless. *Id*. Although provided an opportunity to file a traverse, Petitioner has not filed a traverse.

### III. **Legal Standards of Review**

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973). 28 U.S.C. § 2254, provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person

> in custody pursuant to the judgment of a State court only on the ground that
> he is in custody in violation of the Constitution or laws or treaties of the United
> States
>
> ....
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in the
>> State court proceeding.

28 U.S.C. § 2254. Section 2254 sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014). A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). This limitation places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 348 (1994) (citations omitted).

Mitchell's case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA").

## IV. Discussion

Respondent asserts that all of Petitioner's grounds for relief are unexhausted and procedurally defaulted. (Doc. 9 at 5-6).

Absent unusual circumstances, a federal court should not entertain a petition for writ of habeas corpus, unless the petitioner has first satisfied the exhaustion requirement articulated in 28 U.S.C. § 2254(b). Specifically, habeas relief "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); see also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000); Picard v. Connor, 404 U.S. 270, 275–76 (1971). The habeas statute codifies this principle by requiring that a petitioner exhaust the remedies available in the courts of the State, 28 U.S.C. § 2254(b)(1)(A), meaning a state prisoner must "fairly present" his claims in "one complete round of the state's established appellate review process," before bringing them in federal court. O'Sullivan, 526 U.S. at 845 (stating "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the

8

state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process."); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Picard*, 404 U.S. at 275 (1971); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). This requires that the claim brought in federal court be the substantial equivalent of that presented to the state courts. *Picard*, 404 U.S. at 278; *see also McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) (holding that petitioner must present both "factual and legal substance" of claim to state courts). Mere reliance of state and federal claims on the same constitutional provision does not render the two claims substantially equivalent. *See Brown v. Cuyler*, 669 F.2d 155 (3d Cir. 1982); *Zicarelli v. Gray*, 543 F.2d 466 (3d Cir. 1976). Both the legal theory and the facts on which a federal claim rests must have been presented to the state courts. *See Picard*, 404 U.S. at 277; *Brown*, 669 F.2d at 158–61. "When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.' 28 U.S.C. § 2254(b). In such cases, however, applicants are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims unless the applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default. *See Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)." *McCandless*, 172 F.3d at 260. To demonstrate "cause" for a procedural default, a

9

petitioner must point to some objective external factor which impeded his efforts to comply with the state's procedural rule.   See *Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Prejudice" will be satisfied only if he can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. See *Lockhart v. Fretwell*, 506 U.S. 364, 366 (1993).

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice.   *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001).   The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency.   *Bousley v. United States*, 523 U.S. 614, 623 (1998); Murray, 477 U.S. at 496.   A petitioner establishes actual innocence by asserting "new reliable evidence-- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt.   *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

It is Respondent's position that Petitioner's claims have never been presented to a state court, and, consequently, are procedurally defaulted.   (Doc. 9 at 5-6).   Petitioner argues that he can overcome the procedural default of his first claim under the authority of

10

*Martinez v. Ryan*, 566 U.S. 1 (2010), claiming that his PCRA counsel was ineffective because he failed to raise trial counsel's ineffectiveness for "failing to object to the terms of the agreement which did not include Petitioner's personal property to be counted toward court costs." (Doc. 6 at 7).

*Martinez v. Ryan*, 566 U.S. 1 (2010), recognized a "narrow exception" to the general rule that attorney errors in collateral proceedings do not establish cause to excuse a procedural default. Specifically, *Martinez* holds that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9. To successfully invoke the *Martinez* exception, a petitioner must satisfy two factors: that the underlying, otherwise defaulted, claim of ineffective assistance of trial counsel is "substantial," meaning that it has "some merit," *id.* at 14; and that petitioner had "no counsel" or "ineffective" counsel during the initial phase of the state collateral review proceeding. *Id.* at 17; *see also Glenn v. Wynder*, 743 F.3d 402, 410 (3d Cir. 2014).

A petitioner demonstrates that the underlying ineffective assistance of trial counsel claim has "some" merit by "show[ing] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 937-38 (3d Cir. 2019); *see also Martinez*, 566 U.S. at 13-14. A petitioner demonstrates that post-conviction counsel's

ineffectiveness caused the procedural default by showing that post-conviction counsel's performance was deficient under the first prong of the *Strickland v. Washington*, 466 U.S. 668 (1984) standard. *See Preston v. Sup't Graterford, SCI*, 902 F.3d 365, 376 (3d Cir. 2018); *see also Workman*, 915 F.3d at 937–38. Satisfaction of the first *Strickland* prong requires a petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688.

Initially, Petitioner argues that trial counsel was ineffective during sentencing proceedings by failing to object when the Commonwealth proposed that Petitioner's seized money should be applied to applicable costs. (Doc. 1 at 15).

The Court finds, however, that Petitioner's first claim is not cognizable on habeas review. "A district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.A. § 2254(a). Petitioner's first claim is a challenge to the State's failure to return seized property rather than a challenge to Petitioner's underlying guilty plea which led to Petitioner's custody. *Washington v. Bonds*, No. CV 17-3439(RMB), 2019 WL 3431595, at *6 (D.N.J. July 29, 2019), *certificate of appealability denied sub nom. Washington v. Adm'r S. Woods State Prison*, No. CV 19-2867, 2019 WL 7906160 (3d Cir. Dec. 17, 2019); *Large v. Coleman*, Civ. Action No. 08-1561, 2009 WL 222964 (W.D. Pa. Jan. 29, 2009) (holding

that a denial of motion for return of seized property is not a matter a federal habeas court is authorized to review). Because this claim does not implicate the validity of Petitioner's incarceration, the Court finds that the underlying, otherwise defaulted, claim of ineffective assistance of trial counsel lacks merit, and *Martinez* does not excuse the procedural default of Petitioner's first claim. Thus, Petitioner's first claim is unexhausted and without merit.

Petitioner's remaining two claims are that "the trial court violated Petitioner's Due Process rights by failing to conduct an on the record colloquy when the Petitioner waived his right to collateral review" and "the trial court violated Petitioner's Due Process rights by failing to state the terms of the 1/25/18 plea agreement on the record, an agreement which the Commonwealth did not honor which essentially violates the original plea agreement rendering such involuntary and not intelligently knowing". (Doc. 1 at 15-16). Neither of these claims have been presented to a state tribunal for review. Petitioner concedes this. (Doc. 6 at 11-14).

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.' 28 U.S.C. § 2254(b). In such cases, however, applicants are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims unless the applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default. *See Coleman v.*

*Thompson*, 501 U.S. 722, 750 (1991)." *McCandless*, 172 F.3d at 260. To demonstrate "cause" for a procedural default, a petitioner must point to some objective external factor which impeded his efforts to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Prejudice" will be satisfied only if he can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. *See Lockhart v. Fretwell*, 506 U.S. 364, 366 (1993).

Alternatively, a federal court may excuse a procedural default when the petitioner establishes that failure to review the claim will result in a fundamental miscarriage of justice. *See Werts v. Vaughn*, 228 F.3d 178, 192–193 (3d Cir.2000). A credible allegation of "actual innocence" constitutes a "miscarriage of justice" that enables federal courts to hear the merits of otherwise procedurally defaulted habeas claims. *Hubbard v. Pinchak*, 378 F.3d 333, 338 (3d Cir.2004). The fundamental miscarriage of justice exception, as defined by the United States Supreme Court, is confined to cases of actual innocence as compared to legal innocence, where the petitioner can show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "To be credible," a claim of actual innocence must be based on reliable evidence not presented at trial. *Id.* at 324.

In the instant case, there is no question that Petitioner's two remaining trial court error claims were never raised in the state courts and, are therefore, unexhausted, and procedurally defaulted. Petitioner concedes that both claims are procedurally defaulted but

contends that he can demonstrate "'cause for the default' which results in 'actual prejudice as a result of the alleged violation of federal law'." (Doc. 6 at 12). "Namely, the state court entirely distorted the United States Constitution by failing to conduct an on the record colloquy ensuring Petitioner knowingly and voluntarily relinquished his collateral rights." *Id.*

In support of position, Petitioner states that:

On January 4, 2018 prior to the start of the PCRA hearing the Petitioner, PCRA counsel, and District Attorney were able to reach an agreement in exchange for the defendant to withdraw the PCRA. This agreement was, the Petitioner would withdraw his PCRA petition in exchange for the money that was seized at the time of his arrest. In accordance with the agreement, the Petitioner was advised to file a motion for the return of his property in which the Commonwealth would not object to.

Following this agreement, on January 25, 2018, the state court issued an order indicating that the parties have come to an agreement and that the Petitioner was in fact withdrawing his PCRA petition. However, the state court did not put forth the agreement on the record.

(Doc. 1 at 16). Petitioner argues that the trial court's actions violated the holding of the United States Court of Appeal for the Third Circuit in *United States v. Mabry*, 536 F.3d 231, 236 (3d Cir. 2008), where the Third Circuit found that while "criminal defendants may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver, the Court would only "enforce such waivers, provided that they are entered into knowingly and voluntarily and their enforcement does not work a miscarriage of justice." *Id.*

While the Court agrees that the Third Circuit's holding in *Mabry* would apply if Petitioner were challenging his initial, underlying plea agreement, which resulted in his

incarceration, here, the agreement in the instant action revolves around the appropriate use of monies seized from Petitioner. Because Petitioner's second and third claims relate only to how the monies seized from Petitioner were utilized, and do not challenge the fact or duration of his confinement, they are not cognizable in a federal habeas action and do not allow Petitioner to overcome his procedural default of these claims.

Although the Third Circuit has not squarely addressed whether challenges to restitution are cognizable in habeas petitions, *see Gardner v. Bledsoe*, 415 F. App'x. 384, 386 n.2 (3d Cir. 2011), other circuit courts have held that they are not. *See, e.g., United States v. Bania*, 787 F.3d 1168, 1173 (7th Cir. 2015) (finding that a § 2255 motion "cannot be used as a vehicle for challenging the restitution component of a sentence"); *Shepard v. United States*, 735 F.3d 797, 798 (8th Cir. 2013) (finding that petitioner "cannot challenge the restitution portion of his sentence under section 2255, because the statute affords relief only to prisoners claiming a right to be released from custody," even when his claim is one of ineffective assistance of counsel); *United States v. George*, 411 F. App'x. 31, 33 n. 1 (9th Cir. 2010) (stating that "a § 2255 motion may not be used to challenge [the restitution] aspect[ ] of a sentence."); *Kirby v. Janecka*, 379 F. App'x. 781, 783 (10th Cir. 2010) (finding habeas challenge to restitution order not cognizable under § 2254 because it does not challenge the validity of petitioner's custody); *Kaminski v. United States*, 339 F.3d 84, 89 (2d Cir. 2003) (finding habeas challenge to the propriety of restitution order was not cognizable upon motion to vacate, even though defendant was in custody at time he filed

motion, where motion did not attack the imprisonment sentence, but only the restitution order); *see also Obado v. New Jersey*, 328 F.3d 716, 718 (3d Cir. 2003) (order of restitution is insufficient to satisfy the "in custody" requirement of a habeas petition). Thus, the Court finds Petitioner's second and third[6] claims unexhausted and without merit.

## V. <u>Certificate of Appealability</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322 (2003). Mitchell fails to demonstrate that a COA should issue.

---

[6] To the extent that Petitioner's third claim alleges that the "trial court violated Petitioner's Due Process rights by failing to state the terms of the 1/25/18 plea agreement on the record, an agreement which the Commonwealth did not honor which essentially violates the original plea agreement rendering such involuntary and not intelligently knowing," the only Order of record entered on January 25, 2018, was Petitioner's "Amended Sentencing Order". (Doc. 9-1 at 787). This Order corrected Mitchell's sentence, but did not change his aggregate sentence of 15 to 35 years' incarceration, nor did it impact his original plea agreement. *Id*. Thus, to the extent that Petitioner is referencing this Order as a new plea agreement, required to be entered on the record, his claim is without merit.

17

The denial of a certificate of appealability does not prevent Mitchell from appealing the order denying his petition so long as he seeks, and obtains, a certificate of appealability from the Third Circuit Court of Appeals. *See* Fed. R. App. P. 22(b)(1).

**VI.** **Conclusion**

For the reasons set forth above, the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 will be denied.

A separate Order shall issue.

Dated: June 25, 2021

Robert D. Mariani
United States District Judge